# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>DAVID SMITH, N-90738,<br><br>    Plaintiff,<br><br>    v.<br><br>DEIRDRE BATTAGLIA, Warden,<br><br>    Defendant. | No. 01 C 8511<br><br>Wayne R. Andersen<br>District Judge |

## MEMORANDUM OPINION AND ORDER

The case is before the court on David Smith's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Smith challenges his state court conviction based on ineffective assistance of counsel and admission of alleged perjured testimony. For the reasons set forth below, Smith's petition is denied.

## Background

In a 1989 jury trial, Smith was found guilty of a 1987 home invasion, criminal sexual assault and the murder of Lisa Ferguson. We presume the following facts accepted by the Illinois Supreme Court to be true. 28 U.S.C.S. § 2254(e)(1). The victim, Lisa Ferguson, moved in with her aunt, Juanita Soto and soon after, on the night of the murder, Ferguson was babysitting for her niece in their home. Smith was good friends with Soto and often ate meals with Soto, her boyfriend Carlos and her daughter, Sirena, at their house. On March 17, 1987 at about 6:00 p.m.

1

On March 17, 1987 at about 6:00 p.m. Smith was at a bar with Soto, Carlos, and other friends, Edward and Efren Ramirez. Smith left the bar alone at about 7:30 p.m. At about 8:15 p.m. Ferguson was discovered by her brother and Edward who both reported the crime to Chicago police officers. Upon arriving at the scene, officer Sharon Gaynor found the back door of the rear apartment open and in the apartment she found Ferguson's body lying face down in a pool of blood. Ferguson was naked from the waist down and her shirt had been pulled up above her waist. Officers found two knives with bent blades under and next to her body, as well as a curling iron under her leg and near her buttocks. As Gaynor inspected the body, she heard a noise in another room and discovered four-year-old Sirena Moya "huddled in the corner of the bedroom with a blanket pulled over her head." During a conversation between them, Sirena said a man named David, her father's friend, had been in the apartment that evening.

Meanwhile, a neighbor, Sharon Chandler, stated that at 7:45 p.m. she heard someone in the rear apartment yelling and screaming and then she heard a woman's voice ask "what do you want, leave me alone," and a man responded, "shut up, be quiet." Chandler also heard "slapping sounds, [and] someone hitting someone else." While calling the police department to report a fight, Sharon heard the woman yell, "Help me! Help me!" followed by a long scream and then silence. Police officers arrived within ten minutes.

Gaynor found the name "David Smith" in an address book in the apartment and, when Sirena's mother, Soto, arrived she directed officers Simon and Lukensmeyer to Smith's nearby apartment and described his clothing that he was wearing at the bar. Soto also directed officers to the home of Anthony Ramirez, Ferguson's boyfriend. As Simon and Lukensmeyer stood in the gangway outside Smith's apartment at approximately 10:00 p.m., they heard a man and

woman arguing. From the hallway, officers heard the man say, "I saw somebody get killed tonight," followed by the statement, "I did it." The officers knocked on the door, Smith identified himself and was taken into custody. Testimony further indicated that, when arrested, Smith had wet hair and different clothes from those he was wearing in the bar. No latent fingerprints were found on the knives or were discovered near the victim's body. Vaginal, oral and rectal swabs taken from the victim tested negative for the presence of semen and spermatozoa. The victim and Smith shared the same blood type.

After Smith was taken into custody, his girlfriend, Josephine Palomino, told officers that they could look around her and Smith's apartment. Lukensmeyer found a wet pair of jeans, as well as thermal underwear and shoes, both of which had human blood on them. After receiving *Miranda* warnings, and having been told there was blood found on his clothing. Smith began to give statements about the crime and at approximately 1:20 a.m. Edward Edens, an assistant State's Attorney, summarized the statements in which Smith admitted killing Ferguson. According to the summary which Smith signed, Smith had known Lisa Ferguson for several years but did not know she was at Soto's house that night. He went to the apartment that evening to steal a VCR. When Ferguson answered the door, Smith left and stated he walked around for a while and then returned, not knowing why he went back "except that he must have intended to kill her." Smith forced his way into the apartment and stabbed Ferguson with a knife he found in the kitchen. The statement indicates that cuts found on Smith's body were reportedly were from a prior work injury, but Smith stated "he was glad that she died because he wouldn't want her to remember how badly he had beaten her." During questioning, officers also found a large human blood stain on Smith's knee and after discovering this, officers denied Smith's request to use the

3

restroom for fear he would wash away the stain. Forensic experts later found human blood on the inside panel of Smith's underpants and officers also noticed and photographed a fresh cut covered by a bandage on Smith's thumb and wrists.

Anthony Ramirez was also interrogated by police and was inspected for traces of human blood on his body. No blood was found. Later, Ramirez and Smith were placed in a lineup with two fillers and the child witness, Sirena Moya, identified Smith. (This identification was not used at trial.) Ramirez was not charged and released.

The jury also found Smith eligible for the death penalty under the statutory aggravating factor of murder in the course of the felony of home invasion or aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 9l(b)(6).) After the same jury concluded that there were no mitigating factors sufficient to preclude the death penalty, and Smith declined to give a statement in allocution, the judge sentenced Smith to death for the murder of Lisa Ferguson and ordered penitentiary terms for the remaining felonies. (Resp. Ex. A, *Smith*, 152 Ill.2d at 238-43).

## Procedural History

Following his 1989 conviction and death sentence, Petitioner directly appealed to the Illinois Supreme Court. The Supreme Court affirmed the conviction rejecting Petitioner's Fourth Amendment challenges to the officers' presence in the hallway outside Petitioner's apartment, to his warrantless arrest, to the search of the apartment, and to Petitioner's challenges of the voluntariness and admissibility of his custodial confession. (Resp. Ex. A, *Smith*, 152 Ill.2d at 243-52; M. at 252-57). The Illinois Supreme Court vacated the sentence and remanded for a new

4

sentencing hearing, stating the trial court erred when it refused to ask potential jurors whether they would automatically impose the death sentence if Smith were convicted of murder. (*Id.* at 273-74). Petitioner then filed a petition for a writ of certiorari, which the United States Supreme Court denied in 1993. (Resp. Ex. B, *Smith v. Illinois,* 507 U.S. 1040, 113 S. Ct. 1872 (1993)).

At re-sentencing, Petitioner waived his right to a jury, and the trial court reimposed the death penalty following a new sentencing hearing in 1994. (See Resp. Ex. C, *People v. Smith,* 176 Ill.2d 217, 680 N.E.2d 291 (1997) ). The Illinois Supreme Court affirmed the sentence and Petitioner filed a petition for a writ of certiorari, which the United States Supreme Court denied in October 1997. (Resp. Ex. D, *Smith v. Illinois,* 522 U.S. 920, 118 S. Ct. 311 (1997)).

**Petitioner's First Post-Conviction Proceeding**

In December 1995, Petitioner filed a post-conviction petition, which he later amended in 1997, arguing (1) trial counsel was ineffective for not calling Rose Palomino (Josephine's mother) to testify in support of Smith's pretrial motion to suppress his confession and that appellate counsel was ineffective for not raising this claim on direct appeal; (2) trial counsel was ineffective for not arguing that Petitioner was under the influence of PCP when he gave his statement; (3) trial counsel was ineffective for not introducing Josephine Palomino's testimony at the hearing to suppress the conversation officers heard outside Petitioner's apartment door; (4) trial counsel was ineffective for not investigating and presenting an intoxication defense; (5) trial counsel was ineffective for not presenting an insanity defense; and (6) trial counsel was ineffective, and appellate counsel was ineffective for not arguing trial counsel was ineffective in the first place, for not objecting to the prosecutor's closing remarks about the use of the curling iron to anally penetrate the victim. (Resp. Ex. E at C134-60, 163-66). Petitioner also raised

5

several challenges to his death sentence.

The state trial court granted the State's motion to dismiss the petition without an evidentiary hearing upon determining that most of Petitioner's claims were either addressed on direct appeal or could have been, but were not, raised on direct appeal and that Petitioner's remaining claims of ineffective assistance of appellate counsel claims were without merit. (Resp. Ex. Fl (order) and F2 (hearing on motion to dismiss petition)). Petitioner appealed to the Illinois Supreme Court, which affirmed the dismissal of the petition. (Resp. Ex. G, *People v. Smith,* 195 Ill.2d 179, 745 N.E.2d 194 (2000)). The Court determined that Petitioner's ineffective assistance claim for not calling Rose Palomino to testify at a pretrial suppression hearing was procedurally defaulted and without merit, his ineffective assistance claim for not investigating/introducing testimony that Petitioner was on PCP during the custodial confession as well as expert testimony discussing the effects of PCP was without merit, his ineffective assistance claim for not investigating/arguing an intoxication defense was without merit given that the proposed testimony did not show that Petitioner was on PCP or overly intoxicated at the time of the offenses, and Petitioner's ineffective assistance of counsel claim for not calling Josephine Palomino at a pretrial hearing to testify that Petitioner never said "I did it" was without merit because Petitioner would have been convicted based upon his custodial confession and the abundance of other evidence. *Id.* at 187-97). Petitioner filed a petition for a writ of certiorari, which the United States Supreme Court denied on October 1, 2001. (Resp. Ex. H, *Smith v. Illinois,* 534 U.S. 886, 122 S. Ct. 197 (2001)).

**Petitioner's Second Post-Conviction Proceeding**

In March 2002, Petitioner filed a successive post-conviction petition in the state trial court, arguing that he obtained newly discovered evidence that serologist Pamela Fish committed perjury during her 1992 trial testimony. See (Resp. Ex. I, People v. Smith, 352 Ill.App.3d 1095, 1098, 817 N.E.2d 972 (tat Dist. 2004)). The trial court denied the successive petition without an evidentiary hearing on July 29, 2002. (*Id.*). Petitioner appealed to the Illinois Supreme Court and on January 10, 2003, while his appeal was pending, Governor George Ryan commuted Petitioner's death sentence to life imprisonment. (*Id.*). In response to the commutation order, the Illinois Supreme Court transferred Petitioner's appeal to the Illinois Appellate Court. Petitioner filed a new brief in the state appellate court and argued the one claim that the trial court erred in dismissing his challenge of serologist Pam Fish's laboratory report and testimony without a hearing. (*Id.* at 1098-99.)

In September 2004, the state appellate court held that Petitioner had established cause and prejudice to raise his claim in a successive post-conviction petition and remanded the case to the trial court for an evidentiary hearing regarding the truthfulness of Pam Fish's testimony. (*Id.* at 1112-14). Following an evidentiary hearing in October 2005, the state trial court denied the successive post-conviction petition upon determining that the claim that serologist Pam Fish had committed perjury was without merit. Petitioner did not appeal that judgment. (See Second Amended § 2254 Petition at 10).

**Petitioner's 28 U.S.C. §2254 Proceeding**

On November 6, 2001, Petitioner filed a notice of intent to file a 28 U.S.C. § 2254

petition and a motion for appointment of counsel. (Document #1 in this Court's record). On

March 26, 2002, Petitioner filed a placeholder § 2254 petition, generally incorporating by

reference all of the claims raised on direct appeal and in his first post-conviction petition as well

as asserting several challenges to his death sentence and to Fish's trial testimony about test

results. (Document #15). Based on the 2003 commutation, in April 2003, respondent notified

this court that Petitioner's challenges to his death-penalty sentence were moot, and that the only

remaining claim was his assertion that Fish committed perjury. (Document #21). In December

2003, Petitioner filed an Amended § 2254 Petition, raising new claims, namely that his trial

attorney was ineffective for not calling Rose Palomino to testify at a suppression hearing; his

attorney was ineffective for not investigating the officers' presence in the hallway outside

Petitioner's apartment; the State used perjured testimony from Pam Fish; and the Illinois

Supreme Court deprived Petitioner of a constitutional right when it addressed the merits of

post-conviction claims without remanding for an evidentiary hearing. (Document #27). In

October 2004, this court granted respondent's motion to stay the instant habeas proceeding until

Petitioner's then-pending successive state post-conviction involving the Pam Fish claim had been

resolved. (Documents #45 & 46).

     In January 2006, Petitioner notified this court that he was no longer pursuing the Fish

claim and asked us to resume our consideration of the instant § 2254 action. Pursuant to the

court's permission to clarify his habeas claims, on April 3, 2006, Petitioner filed his second

amended petition that presents the following claims:

    (1)    trial counsel was ineffective for not investigating/presenting evidence that
            Petitioner lacked the specific intent for murder because he was under the influence
            of PCP at the time of the offense, which would have provided for an intoxication

defense

(2)     trial counsel was ineffective for failing to investigate/present evidence of Josephine Palomino's testimony at the motion to suppress the arrest because her testimony would have shown the officer's presence in the hallway was unjustified, thereby suppressing all information gathered while there.

(3)     trial counsel was ineffective for not calling Rose Palamino and other witnesses during Petitioner's suppression of custodial confession hearing, including an expert witness that would have testified about the effects of PCP related to giving voluntary statement; and

(4)     Officer Simon's testimony that he heard Petitioner say "I did it" while he was standing in the apartment hallway was perjured.

## Legal Standard

Federal courts may issue a writ of habeas corpus if a Petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The Antiterrorism and Effective Death Penalty Act of 1996 provides that federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *See Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Boss v. Pierce*, 263 F.3d 734, 738 (7th Cir. 2001). In addition, section 2254 allows for habeas relief only if the state court decision lies "well outside the boundaries of

permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Before a federal court may review the merits of a habeas petition, a Petitioner must (1) exhaust all remedies available in the state courts and (2) fairly present any claims in state court first or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."). A Petitioner must exhaust his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1995). If a Petitioner does not fully and fairly present his claims to the state court, then he will be procedurally defaulted from raising the claims for the first time in federal court. The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the Petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the Petitioner fails to present a claim to the state courts at the time and in the way required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

**Discussion**

*Ineffective Assistance of Counsel claims*

As to the ineffective assistance claims, the court reviews counsel's performance deferentially, particularly counsel's choice of strategies. *See Drake v. Clark*, 14 F.3d 351, 355-57 (7th Cir. 1994). *Strickland* sets forth a two-prong analysis for determining ineffectiveness of

counsel: (1) a showing that counsel's performance was deficient and (2) a showing that the deficient performance prejudiced the Petitioner. *Strickland v. Washington*, 466 U.S. 668, 678 (1984). Establishing deficient performance means Petitioner must show counsel's performance fell below objective standards for reasonably effective representation. *Strickland*, 466 U.S. at 687-688. A habeas Petitioner bears a heavy burden in demonstrating performance that was so lacking it fell below an objective level of reasonableness so as to offend the Constitution. *See id.; see also Brown v. Sternes*, 304 F.3d 677, 683-686 (7th Cir. 2002). In reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In the same vein, to satisfy the prejudice prong of the *Strickland* test, Petitioner must make a showing that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. That is, it must be shown that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *See Brown*, 304 F.3d at 683; *Morris v. United States*, 264 F.3d 726, 727 (7th Cir. 2001).

Here, Petitioner's claims ineffective assistance of counsel for (1) not presenting or investigation evidence to show he was under the influence of PCP to support an intoxication defense, (2) for failing to investigate or present Josephine Palamino's testimony to support the trial counsel's motion to quash Petitioner's arrest, and (3) for not calling witnesses to support the involuntariness of his confession were all addressed in his post-conviction proceedings.

The Illinois Supreme Court addressed and denied the intoxication claim because the affidavits in support of the claim did not conclusively establish that Petitioner was under the

11

influence of PCP and the court determined that, in light of Petitioner's custodial confession saying he intended to kill Lisa Ferguson and his ability to recall vivid details, an intoxication defense would fail.

As to Josephine Palamino speculative testimony, Petitioner claims that had Josephine been called during the motion to quash Smith's arrest proceedings, the suppression would have been granted, the custodial confession and physical evidence would not have been considered, and Smith would not have been convicted. The Illinois Supreme Court found that there were no Fourth Amendment violations of Illinois Constitution because the officers were in the apartment's common area, the door was unlocked, Petitioner's voice was raised, and the officers used no artificial means to enhance their ability to enter the area or hear the conversation. (Smith, 152 Ill.2d 246). Petitioner offers no additional evidence, aside from the affidavit from Josephine Palamino stating that tenants needed a key to get in the door, to support his contention that had Josephine testified, the court's ruling would have been different. As the Illinois Supreme Court determined, the identification of Petitioner by the eyewitness would have established probable cause for his arrest. We do not believe that Josephine's post trial statement that the hallway door is always locked is sufficient to depart from the presumptive correctness of the state court findings. *Allen v. Yukins*, 366 F.3d 396, 406 (6th Cir. 2004).

We are also not convinced that Petitioner's claim that trial counsel was ineffective for not calling, Efren, Michael and Edward Ramirez, as well as Dr. Bruce Perry to support his contention that his custodial confession statement was given involuntarily while he was on PCP has merit. Smith claims that Efren, Manuel and Edward would have testified that Smith was intoxicated and that Dr. Perry would have informed the court of the mental incapacity that results from PCP

12

ingestion. However, with the affidavits of these individuals in hand, the Illinois Supreme Court rejected this claim, saying the Edward Ramirez' statement in his affidavit was speculative and insufficient to establish that Petitioner was on PCP during the murder. Petitioner has made no showing that this determination was contrary to or an unreasonable application of law or that it went against the clear and convincing weight of evidence. Furthermore, Dr. Perry's discussion of the effect of PCP was only general. Perry did not offer support as to whether Petitioner took PCP on the night of the murder or what effect that drug had on his ability to confess voluntarily.

Petitioner now offers no evidence to refute the Illinois Supreme Court determination or to establish prejudice. We must presume that factual determinations made by the state court are correct and Petitioner must rebut the findings with clear and convincing evidence. 28 U.S.C. § 2254(e). We believe that Petitioner cannot establish that the resolution of his claims was contrary to or were an unreasonable application of federal law or that they were determined outside of the evidence presented to the court. Thus, Petitioner's ineffective assistance of counsel claims are denied.

*Procedurally Defaulted Claims*

Smith re-asserts that Rose Palamino, his girlfriend's mother, should have been able to testify that Smith's confession was not voluntary and claims for the first time in this petition that officer Simon's testimony of hearing "I did it" is false. As to Rose Palamino's testimony, the Illinois Supreme Court held that this argument is waived because Smith did not raise it on direct appeal. A state court's determination that a claim has been forfeited for not raising it on direct appeal is sufficient to bar federal habeas review. *Martin v. Evans*, 384 F.3d 848, 855 (7th Cir.

2004). Presenting the claim that Officer Simon lied for the first time in a federal petition for writ of habeas corpus does not satisfy the full and fair presentation to the state court requirement. Therefore, Smith has not fully and fairly presented these claims to the Illinois state court and they are procedurally defaulted. However, a federal court may address the merits of a procedurally defaulted claims if Petitioner has established cause and prejudice or that a fundamental miscarriage of justice has occurred. *Richardson v. Briley*, 401 F. 3d 794, 801(7th Cir. 2005); *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977).

Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" to be something external to the Petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish prejudice, the Petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. Smith has failed to establish cause and prejudice in his petition. In fact, Smith has not offered any explanation for his failure to previously raise his defaulted claims, nor has he shown that the alleged errors "infected his entire trial with error of constitutional dimensions." *See id.*

Despite being unable to establish cause and prejudice to excuse his procedural defaults, Smith may still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which the Petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). It requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-

40 (1992). The miscarriage of justice exception applies only if the Petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Here, Smith fails to offer any support that demonstrates, or even suggests, that he is actually innocent of the murder. Absent any evidence of actual innocence, Smith cannot establish that, but for the alleged errors in his trial, it is more likely than not that no reasonable trier of fact would have convicted him of murder, home invasion and aggravated sexual assault. Thus, Smith's claims that Rose Palamino should have been called as a witness at the suppression hearing and that officer Simon's testimony is perjured, are not a basis for this court to order habeas relief.

### Conclusion

For the foregoing reasons, Smith's petition for writ of habeas corpus [60] is denied.

It is so ordered.

ENTER:

Wayne R. Andersen
United States District Court

Dated: December 1, 2006